UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

SHAWANDA CARTER                                                        Plaintiff
*as Administratrix of the Estate of Devor*
*Stoner*

v.                                                        Civil Action No. 3:22-cv-00673-RGJ

LOUISVILLE METROPOLITAN POLICE                                         Defendants
DEPARTMENT, *ET AL.*

* * * * *

## MEMORANDUM OPINION & ORDER

Plaintiff, Shawanda Carter, as Administratrix of the Estate of Devor Stoner ("Carter"), moves to remand this action to the Jefferson Circuit Court pursuant to 28 U.S.C. §§ 1441 and 1446. [DE 5]. Defendant, Louisville Metropolitan Government ("Louisville Metro"), moves to dismiss. [DE 4]. Responses and replies were filed to both motions. [DE 6; DE 7; DE 8; DE 9]. These matters are ripe for adjudication. For the reasons below, the Plaintiff's Motion to Remand [DE 5] is **DENIED** and Louisville Metro's Motion to Dismiss [DE 4] is **GRANTED.**

### I.        Background

The Second Amended Complaint asserts that Devor Stoner was used as an undercover criminal informant by Louisville Metro Police Department ("LMPD") officers. [DE 1-3, at 38 ¶ 23]. Plaintiff claims that on August 25th, Stoner was to meet with one or more individuals being investigated by the LMPD for criminal activity. [*Id*. at 40 ¶ 28]. On August 25th, Stoner was shot and killed by an individual being investigated by LMPD during an operation. [*Id.* ¶ 34].

Plaintiff filed an initial complaint in Jefferson County state court against LMPD, various LMPD officers in their individual capacities and Louisville Metro on August 15, 2022, [DE 5 at 87 ¶ 1], alleging claims of battery, wrongful death, negligence and gross negligence, as well as

1

state law claims of negligent training and supervision and a general §1983 deprivation of rights

claim against Louisville Metro. [DE 1-3 at 52-60 ¶¶ 68-96]. On August 19, 2022, Plaintiff filed an

Amended Complaint, and a Second Amended Complaint on August 25, 2022. [DE 5-1 at 96].

Plaintiff attempted service by certified mail on August 18, 2022, but it was refused. [DE 7 at 119

¶6a]; [DE 7-2 at 131]. Service was later picked up at a postal facility on August 24, 2022. [DE 7

at 131]. After allegedly receiving no response from defendants, Plaintiff moved for the

appointment of a warning officer attorney on November 16, 2022. [DE 5 at 88 ¶4]. The warning

officer attorney submitted his report on December 20, 2022, noting that attempted service by

certified mail was delivered on December 9, 2022, but that he had received no response other than

one package being returned as undeliverable. [DE 5-3 102-03]. Louisville Metro removed the case

to federal court on December 20, 2022. [DE 1].

## II.      Discussion

### A. Plaintiff's Motion to Remand

When confronted with a motion to remand and a motion to dismiss, a court must resolve

the motion to remand first. *See, e.g.*, *Open Sys. Techs. DE, Inc. v. Transguard Ins. Co. of Am.*, No.

1:14-CV-312, 2014 WL 3625737, at *2 (W.D. Mich. July 22, 2014). If remand is appropriate, the

state court should decide the motion to dismiss. *Id.*

A defendant may remove any state court civil action to federal court if the district court

would have had subject matter jurisdiction had the case been originally filed in federal court. 28

U.S.C. § 1441(a). The removing party bears the burden of establishing removal was proper. *Her*

*Majesty the Queen v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989); *Conrad v. Robinson*, 871

F.2d 612, 614 (6th Cir.1989). The federal removal statute provides that a notice of removal "shall

be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy

of the initial pleading." 28 U.S.C.A. § 1446(b). Removal raises significant federalism concerns and, for this reason, federal courts must "strictly construe" such jurisdiction. *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). Accordingly, all "doubts as to the propriety of removal are resolved in favor of remand . . ." *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 405 (6th Cir. 2007).

### 1. The Rule of Unanimity

Under the federal removal statute, a defendant must file its notice of removal "within thirty days after the receipt ... through service or otherwise, of a copy of the initial pleading setting forth the clam for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b). When there are multiple defendants, "all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. §§ 1446(b)(2)(A). This requirement, otherwise known as the "rule of unanimity," ensures that all defendants have a say before a case involving their interests is removed from state court. *Farnsworth v. Nationstar Mortg., LLC*, 569 Fed.Appx. 421, 424 (6th Cir. 2014). "Failure to obtain unanimous consent forecloses the opportunity for removal under Section 1446." *Loftis v. United Parcel Serv.*, 342 F.3d 509, 516 (6th Cir. 2003).

As grounds for its motion to remand, Plaintiff argues the rule of unanimity required all defendants to consent to removal, either by joining in the removal or by filing a written consent. [DE 5 at 89 ¶10]. Plaintiff argues that though an unknown LMPD officer was served on August 24, 2022, they never joined in the removal or filed a consent by September 25, 2022, and thus did not consent. [DE 7 at 122 ¶7]. Accordingly, Plaintiff maintains the removal was improper, requiring a remand to state court. [*Id.*]. Louisville Metro argues that no defendant was served on August 24, 2022 and the rule of unanimity does not apply. [DE 6 at 112].

3

Before the Court can apply the unanimity rule, the Court must determine which Defendants were served. Plaintiff correctly points out that "the Federal Rules explicitly state that '[t]hese rules apply to a civil action *after* it is removed from a state court.' FED. R. CIV. P. 81(c)(1)." [DE 7 at 120, (emphasis added)]. The federal rules "'neither add to nor abrogate what has been done in the state court prior to removal'" *Butner v. Neustadter*, 324 F.2d 783, 785 (9th Cir. 1963), *quoting Talley v. American Bakeries Co*., 15 F.R.D. 391, 392 (E.D.Tenn.1954). The Court does not retroactively apply federal standards in evaluating previous state-level service of process. Instead, "[i]n determining the validity of service [in state court] prior to removal, a federal court must apply the law of the state under which the service was made." *Smith v. Parks*, No. CIV.A. 5:14-260-KKC, 2015 WL 770337, at *1–2 (E.D. Ky. Feb. 23, 2015) *citing* 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1082 (2d ed.1987). In other words, "[a]s long as the matter remained in the Kentucky court, it was the Kentucky Rules that applied." *Pac. Emps. Ins. Co. v. Sav-a-Lot of Winchester*, 291 F.3d 392, 400 (6th Cir. 2002).

Proper service of process on a city or state government, like Louisville Metro, is governed by Rule 4.04(7) of the Kentucky Rules of Civil Procedure, which provides that service "shall be made upon a city by serving the chief executive officer thereof or an official attorney thereof." Ky. R. Civ. P. 4.04(7). The parties agree that the Chief Executive Officer at the time of filing would have been the Mayor, the Hon. Greg Fischer. [DE 6 at 111]; [DE 7 at 119 ¶6a]. The parties also agree that the Mayor was not personally served. [DE 7 at 119 ¶6a] ("The certified receipt, however, does not correspond to service on the Office of the Mayor. . . [t]hat is the zip code for service on LMPD Headquarters----not City Hall. It is clear, therefore, that service was likely upon one of the partially-named LMPD officers."); [DE 6 at 111] ("the delivery address portion reads "US Attorney – Greenbaum, Atria – Doe Anderson." There is no mention of Mayor Greg Fischer or

4

the Jefferson County Attorney."). Plaintiff's August 24th attempted service did not "accomplish[] proper service on the City's chief executive officer or its official attorney, i.e., personally by hand delivery," and therefore pursuant to the Kentucky Rules of Civil Procedure, Louisville Metro was not properly served on August 24th. *Midwest Media Prop., LLC v. City of Fort Wright, Kentucky*, No. CV 2006-25 (WOB), 2006 WL 8445757, at *2 (E.D. Ky. May 19, 2006). [1]

Plaintiff concedes uncertainty about to whom the certified mail summons and process were sent. Even so, Plaintiff argues that "it is clear from the certified mail tracking history that someone secured process on behalf of the identified Mayor-Defendant on August 24, 2022." [DE 7 at 121 ¶b]. The Court disagrees. While the certified mail receipt shows that someone picked up the mail, it is not clear that person did so on behalf of the Mayor. Indeed, Plaintiff argues that service was likely upon one of the partially named LMPD officers – not the Mayor. [DE 7 at 119]. Regardless, it is uncontested that the Mayor did not personally receive service, and Louisville Metro was therefore not properly served at that time.

---

[1] Even if Plaintiff were correct that the Federal rules of service applied, the result would be the same. Under the federal rule, "[o]nce the officer's identity is determined, the word 'delivering' in Rule 4(j) indicates that personal service should be made upon that particular individual." 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1109 (3d ed. 2005). *See id.* at n. 5 ("Thus service on the chief executive under Rule 4(j) cannot be made by delivering the process at his usual place of abode or where the chief executive is usually found unless this method of service is allowed under state law."). Numerous federal courts have held that service on a secretary, clerk, or other employee of a government entity does not satisfy the requirement that the summons and complaint be "delivered" to its chief executive officer. *See, e.g.*, *Willey v. Ward*, 197 F. Supp.2d 384, 387 (D. Md. 2002); *Raimondo v. Village of Armada*, 197 F. Supp.2d 833, 838 (E.D. Mich. 2002). In *Amen v. City of Dearborn*, 532 F.2d 554 (6th Cir. 1976), *repudiated on other grounds*, 818 F.2d 496 (6th Cir. 1987), the Sixth Circuit stated that service on the secretary to the city clerk would not be effective service on the City under the federal rule, which requires that the chief executive officer be served. *Id.* at 558. Yet because the applicable Michigan rule permitted service by leaving a copy of the summons and complaint with a "person in charge of the office," the court found service under the alternative state method to be sufficient. *Id.* In contrast, in *Midwest Media Prop., LLC v. City of Fort Wright, Kentucky*, plaintiff attempted service on an assistant city clerk, rather than on the Mayor himself. No. CV 2006-25 (WOB), 2006 WL 8445757, at *2 (E.D. Ky. May 19, 2006). Unlike *Dearborn*, in *Midwest Media* there was no alternative state method available under the applicable Kentucky Rules of Civil Procedure and plaintiff's service on an assistant city clerk, rather than on the Mayor himself, was insufficient to accomplish service on the City of Fort Wright pursuant to the federal rule. So too here.

Having Determined Louisville Metro was not served on August 24th, the Court must determine whether any other defendants were served. Plaintiff's argument that a defendant other than Louisville Metro was properly served on August 24th and therefore their consent was required for removal is unavailing. Plaintiff argues that although she does not know which defendant she served, the lack of objection to service of process of any defendant indicates that it was proper – and in the alternative, the burden is upon Defendant Louisville Metro to prove that service was not proper on their Chief Executive Officer, the Mayor. [DE 7 at 121]. While it is true that the removing party bears the burden of establishing removal was proper, *see e.g. Her Majesty the Queen v. City of Detroit*, 874 F.2d 332, 339 (6th Cir.1989), the "party on whose behalf service of process is made has the burden of establishing its validity when challenged." § 1083 Principles of Construction of Rule 4, 4A Fed. Prac. & Proc. Civ. § 1083 (4th ed.); *see, e.g.*, *Frederick v. Hydro-Aluminum S.A.*, 153 F.R.D. 120 (E.D. Mich. 1994) (when validity of service of process is contested, plaintiff bears burden of proving that proper service was effected).

Plaintiff contends that on August 18th service was attempted at "the zip code for service on LMPD Headquarters" and that service was ultimately accepted via pick up at a postal facility on or about August 24, 2022 [DE 7 at 119]. Plaintiff further asserts that one of the partially named officers was properly served as an "individual served accepted service on August 24, 2022 and has offered no objection to the means or method of service of process since that date," although the individual officer allegedly served is not identified. [DE 7 at 120]. To the contrary, the certified mail receipt appears to show the delivery address as "US Attorney – Greenbaum, Atria – Doe Anderson," and the individual who signed the receipt as "Bill Dutchman." [DE 5-2 at 100]. Bill Dutchman is neither a named defendant, nor has there been any evidence that Mr. Dutchman is authorized under Kentucky Rule of Civil Procedure 4.04 to accept service on behalf of any

individual defendant. Plaintiff has failed to provide proof of proper service on any of the partially identified LMPD officer defendants or any other of the named defendants.[2] Accordingly, plaintiff's August 24, 2022 attempt at service was not proper and no other defendant's consent to removal was required.

### 2. Timeliness of the Notice of Removal

Plaintiff argues in the alternative that Louisville Metro was the only defendant served on August 24, 2022, and Louisville Metro failed to file a timely notice of removal by September 25, 2022. Under the federal removal statute, a defendant must file its notice of removal "within thirty days after the receipt . . . through service or otherwise, of a copy of the initial pleading setting forth the clam for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b). As outlined above, it is uncontested that the mayor did not personally receive service, and Louisville Metro was therefore not properly served on August 24.

Kentucky Rule of Civil Procedure 4.07(a) authorizes service by warning order attorney, and Louisville Metro was properly served when it received service via the warning order attorney on December 12, 2022. [DE 1-3 at 20-21]. Pursuant to 28 USCA § 1446(b)(2)(B), the thirty-day deadline for filing a notice of removal began "after receipt by or service on that defendant of the initial pleading or summons" on December 12, 2022. As a result, Louisville Metro was thus required to submit their notice of removal no later than January 12, 2023. Louisville Metro's Notice of Removal filed on December 20, 2022 was therefore timely. The motion to remand is **DENIED**.

---

[2] Defendant's reference to an "Officer Cody Woolston" receiving notice on October 22, 2021 [DE 1 at 2] went unaddressed by either party and thus the Court did not consider it. Furthermore, as Officer Woolston is not a named defendant, and this action was not filed until August 15, 2022, reference to this officer appears to be a typographical error.

**B. The Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

**1. State Law Claims.**

Counts I through IV of the Second Amended Complaint articulate state law claims against Defendant Metro, specifically Battery (Count 1), Wrongful Death (Count 2), Negligence and Gross Negligence (Count 3), and Loss of Parental Consortium (Count 4). [DE 1-2 at 52-60 ¶¶68-96]. Louisville Metro asserts that any state law claims against it must be dismissed as it is entitled to "the same sovereign immunity granted counties, their agencies, officers, and employees." [DE 4-1 at 82]. Plaintiff agrees. Louisville Metro "is entitled to sovereign immunity from the state law claims articulated in the Plaintiff's Complaint." [DE 8 at 145]; *see* Ky. Rev. Stat. § 67C.101(2)(e); *Schwindel v. Meade Cty.*, 113 S.W.3d 159, 163 (Ky. 2003) (Under Kentucky law, county governments are protected by sovereign immunity); *Jewish Hosp. Healthcare Servs., Inc. v. Louisville/Jefferson Cty. Metro Gov't,* 270 S.W.3d 904, 907 (Ky. App. 2008) ("A county 'is a political subdivision of the Commonwealth as well, and as such is an arm of the state government. It, too, is clothed with the same sovereign immunity.' . . . Therefore, absent an explicit statutory waiver, Louisville Metro is entitled to sovereign immunity.") Additionally, to the extent that Plaintiff's Negligent Hiring, Training, and Supervision claim in Count 5 is based on state law, it is also barred by sovereign immunity. And finally, to the extent that Carter's Deprivation of Rights Under Color of Law in Count 6 is based on Section Eleven of the Constitution of the Commonwealth of Kentucky, it too is barred by sovereign immunity. Thus, these claims will be **DISMISSED**. [3]

---

[3] Plaintiff concedes that Louisville Metro is entitled to sovereign immunity from the state law claims in the Second Amended Complaint. When a party fails to respond to an argument in a motion to dismiss "the Court assumes he concedes this point and abandons the claim*." ARJN #3 v. Cooper*, 517 F. Supp. 3d 732, 750 (M.D. Tenn. 2021); *see also McIlwain v. Dodd*, No. 22-5219, 2022 WL 17169006, at *3 (6th Cir. Nov. 22, 2022) (affirming the district court's conclusion that the plaintiff abandoned certain claims that were neither addressed in the response to the motion to dismiss nor mentioned in a proposed amended complaint).

## 2. Federal Question Claims

Plaintiff asserts against Louisville Metro a Deprivation of Rights under Color of Law claim under 42 U.S.C. Sec. 1983 in Count VI, alleging violations of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution. To the extent that Plaintiff contends that the Negligent Training and Supervision claim against Louisville Metro in Count 5 was raised as part of a §1983 claim, the Court includes it in this analysis.

### a. Section 1983 - Illegal official policy or custom

To state a § 1983 claim based on a municipal policy or custom, the plaintiff must "identify the policy, connect the policy to the [County] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993). A plaintiff generally has four ways to demonstrate a municipal entity's unlawful policy or custom: "[t]he plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009) (*quoting Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)). Even after showing an unlawful policy or custom, a "plaintiff must also demonstrate a direct causal link between the policy and the alleged constitutional violation in order to show that the municipality's deliberate conduct can be deemed the 'moving force' behind the violation." *Jones v. Louisville/Jefferson Cnty. Metro Gov't,* 482 F. Supp. 3d 584, 597 (W.D. Ky. 2020) (citing *Spears*, 589 F.3d 249 at 256 (cleaned up)). "[P]roof merely that such a policy or custom was 'likely' to cause a particular violation is not sufficient; there must be proven at least an 'affirmative link' between policy or custom and violation; in tort principle terms, the causal connection must be 'proximate,' not merely 'but-for' causation-in-fact."

*Mann v. Helmig*, 289 Fed.Appx. 845, 850 (6th Cir. 2008) (quoting *Spell v. McDaniel*, 824 F.2d

1380, 1388 (4th Cir. 1987)). At the motion to dismiss stage, it is sufficient for a plaintiff to

plausibly allege an unlawful policy or custom and a direct causal link to the harm. *Daugherty v.*

*Louisville-Jefferson Cnty. Metro Gov't*, 495 F. Supp. 3d 513, 524 (W.D. Ky. 2020) (finding

plaintiffs sufficiently stated a § 1983 claim based on a municipal policy or custom where "Plaintiffs

allege[d] a specific policy of targeting African American males for traffic stops")).

    Plaintiff points to allegations in her Second Amended Complaint to support her argument

that she has sufficiently stated this claim:

> 22. That the LMPD Standard Operating Procedure requires contemporaneous
> notification and consent of a parent to the use of a minor during police investigating
> operations.
>
>                \* \* \* \*
>
> 88. That this Defendant failed to adequately train its personnel to properly and
> safely perform law enforcement functions as conducted on or about the date of the
> incident described in this complaint. This failure in training included highlighting
> the dangers presented to minors by their use as confidential informants, the
> increased safety measures necessary when minors are used in such a capacity and
> the need for parental input and consent when minors are used in such confidential
> informant operations.
>
> 89. That this Defendant failed to adequately supervise the unknown Defendant
> police officers during both training in law enforcement activities and during the
> planning and execution of events contemporaneous with the August 25, 2021 law
> enforcement activity described in this Complaint by failing to ensure compliance
> by the Unknown Officer Defendant with the LMPD Standard Operating Procedures
> and other applicable departmental rules regarding the conduct of confidential
> informant operations involving the use of minors.

[DE 1-3 at 38; 56-58].

    Plaintiff further argues that "the history of the LMPD over the last five (5) years alone

reveals a custom of allowing essentially unfettered, unsupervised and undertrained activity on the

part of its law enforcement officers." [DE 8 at 144]. Plaintiff specifically alleges that "a complete

lack of a written plan, any appointed supervising detective [and] any input or consent from Devor's

parent" as well as "efforts to hide recording device equipment following the operation by participating officers" are sufficient factual allegations that LMPD has an unlawful custom [*Id*.]. Plaintiff argues that Louisville Metro is liable for "1) having a custom or policy allowing the use of minors in dangerous investigative operations, 2) fail[ing] to adequately train LMPD personnel in the proper use, planning and execution of confidential informant operations and 3) fail[ing] to adequately and properly supervise LMPD personnel during the planning and execution of the August 25, 2021 operation leading to Devor's death." [*Id*. at 136].

Defendants argue that "[Plaintiff] alleged no facts within her Complaint to support a claim against [Louisville Metro]. Instead, [Plaintiff] generally asserted that, 'Defendants did, without provocation or justification, pursuant to the custom, policy, and directives of city and county officials, erroneously and illegally seize, detain, arrest, and cause the injury and death of Devor Andre Stoner, Jr. in violation of federal constitutional protection under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution . . .'" [DE 4-1 at 83].

While the Court must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party, it "need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). Plaintiff does not allege that Louisville Metro's policy itself is illegal or unconstitutional. Instead, Plaintiff claims that Louisville Metro has a policy or custom of inadequate training or supervision because "the LMPD Standard Operating Procedure requires contemporaneous notification and consent of a parent to the use of a minor during police investigative operations." [DE 1-3 at 38 ¶22]. Plaintiff further asserts the officers failed to abide by LMPD's Standard Operating Procedure as "Defendants exposed Devor Stoner to an operation . . . and did so without the knowledge or consent---express or implied---of any parent to the minor

child." [*Id*. at 52 ¶67]. Put differently, Plaintiff alleges that Louisville Metro has a policy, but their custom is to ignore that policy.

Plaintiff points towards "the history of the LMPD over the last five (5) years alone," as factual support for a custom of "unfettered, unsupervised and undertrained activity on the part of its law enforcement officers." [DE 8 at 144]. In *Sistrunk v. City of Hillview*, the plaintiff argued that the history of Louisville Metro revealed a custom of a failure-to-train officers, pointing to three other incidents besides her own. The court in *Sistrunk* noted that none of those incidents showed a failure to train that was similar, repetitive, or customary, that Sistrunk "offer[ed] no explanation regarding how either case shows a custom of deliberately inadequate training" and therefore none of the cases "push Sistrunk's claim beyond 'possibility' and across the line to 'plausibility.'" *Sistrunk v. City of Hillview*, 545 F. Supp. 3d 493, 503 (W.D. Ky. 2021) (citing *Twombly*, 550 U.S. at 557). As in *Sistrunk*, the Plaintiff here points to the history of Louisville Metro to argue that there is a policy or custom for a failure to train or supervise. But also as in *Sistrunk*, she fails to explain how the "history of the LMPD over the last five (5) years alone" shows a custom of deliberately inadequate training regarding the use of minors as confidential informants or that such failures are similar, repetitive or customary, or even what facts in LMPD's history she refers to. Conclusory allegations that defendants had an unlawful policy, unaccompanied by supporting factual allegations, "are not entitled to the assumption of truth" and do not state a plausible claim for relief. *Taylor v. Brandon*, No. 3:14-CV-588-DJH-DW, 2016 WL 258644, at *3 (W.D. Ky. Jan. 20, 2016) (citing *Iqbal*, 556 U.S. at 679)). Even accepting all the facts in the complaint as true and construing them in the light most favorable to Plaintiff, these bare allegations of "a custom of allowing essentially unfettered, unsupervised and undertrained activity on the part of its law enforcement officers," do not adequately allege an illegal official

agency policy or custom of incorporating the use of minors in confidential informant operations. Nor has Plaintiff plausibly alleged a direct causal link between the policy and the alleged constitutional violation to show that the municipality's deliberate conduct can be considered the 'moving force' behind the violation. Defendant's Motion as to these claims is **GRANTED**.

### b. Section 1983 – Failure to Train or Supervise

To state a § 1983 claim based on a municipality's failure-to-train or failure-to-supervise, the plaintiff must allege: 1) "the training or supervision was inadequate for the tasks performed"; 2) "the inadequacy was the result of the municipality's deliberate indifference"; and 3) "the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). As to the municipality's "deliberate indifference," the plaintiff must either allege: 1) "prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury"; or 2) "[A] single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005); *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 409, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

Defendant contends that Plaintiff has failed to state her failure-to-train and failure-to-supervise claim.

> While Plaintiff's Second Amended Complaint and Response to the Motion to Dismiss contain general allegations relating to Metro Government's training and supervision of its officers, Plaintiff has failed to specify any allegedly similar conduct. There are no allegations that LMPD was on notice of the issue and acted with deliberate indifference toward the problem . . . Plaintiff has offered no more than the mere suggestion that better or more training and supervision could have prevented the alleged injury despite actually alleging that participating officers are trained on the associated risks.

[DE 9 at 4-5].

Plaintiff argues that she has sufficiently stated her failure-to-train and failure-to-supervise claim: "[Louisville Metro's] failure in training included failure to highlight the dangers presented to minors by their use as confidential informants, failing to abide by the increased safety measures necessary when minors are used in such a capacity and the failure to obtain the necessary parental input and consent when minors are used in such confidential informant operations." [DE 8 at 143]. Regarding the failure to supervise, Plaintiff asserts that "[a]mong the incorporated facts in this claim, the Plaintiff points out that 1) no parental consent was obtained prior to planning and executing the August 25th operation, 2) no plan was formulated or published to assure Devor's safety, 3) no supervising detective was assigned to the operation and 4) no increased safety and security measures were deployed to minimize the risks known to Defendant Metro to a minor involved in dangerous activity." [DE 8 at 143].

While Plaintiff asserts the legal conclusion that "the history of the LMPD over the last five (5) years alone reveals a custom of allowing essentially unfettered, unsupervised and undertrained activity on the part of its law enforcement officers," [DE 8 at 144], that is the extent to which Plaintiff claims that Louisville Metro was 'deliberately indifferent' to those violations. Plaintiff must plausibly allege facts that the training provided was deficient and that Louisville Metro acted with deliberate indifference to Plaintiff's rights through the training provided to LMPD Officers.

In *Daugherty v. Louisville-Jefferson County Metro Government*, this Court found sufficient allegations of a negligent training and supervision claim where plaintiff alleged Louisville Metro was on notice that their training was deficient because a series of newspaper articles had been published about the alleged violations, multiple lawsuits had been filed against Louisville Metro with similar allegations, and there had been testimony before Louisville Metro Council about these

15

alleged repeated violations. 495 F. Supp. 3d 513, 525 (W.D. Ky. 2020). The plaintiff further alleged that Louisville Metro did not investigate these abuses until after the newspaper articles were published, thereby "ignoring a history of abuse." *Id*. As a result, plaintiff survived the motion to dismiss stage as they had plausibly alleged that Louisville Metro was on notice of and was deliberately indifferent to training deficiencies. *Id*.

In contrast, Plaintiff has not alleged similarly sufficient facts to cross over the threshold of a motion to dismiss. In fact, the allegations in the Second Amended Complaint appear to contradict the claim that Louisville Metro was on notice that the training was deficient and that they acted with deliberate indifference. Plaintiff asserts that "[t]he increased risk of harm [to minors] is known to participating LMPD personnel and is discussed with participating law enforcement personnel during related training sessions and field operations." [DE 1-3 at 38 ¶20]. Because Plaintiff alleges that LMPD discusses the risks of using minors as informants during their training sessions and field operations, the allegation seems to be that LMPD needed to give better or more training to officers. Such an allegation, "that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the injury-causing conduct" is not sufficient for a lack-of-training claim, as "[s]uch a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391, 109 S. Ct. 1197, 1206, 103 L. Ed. 2d 412 (1989). As a result, Plaintiff has not plausibly asserted a claim based on a pattern of violations. *See Cooper v. Rhea Cty., Tenn.*, 302 F.R.D. 195, 201 (E.D. Tenn. 2014) (finding plaintiff failed to state negligent training and supervision claim where plaintiff only alleged that "[t]he customs, practices, and policies of the Rhea County Sheriff's Department, as promulgated by Defendant, Rhea County, Tennessee

through Defendant, Mike Neal, facilitated a substantial risk of serious harm and injury to Plaintiff, and Defendant, Mike Neal, failed to properly train and supervise the Arresting Officers so as to prevent the serious bodily injuries suffered by the Plaintiff"); *Okolo v. Metro. Gov't of Nashville*, 892 F. Supp. 2d 931, 944 (M.D. Tenn. 2012) (dismissing failure-to-train claim where plaintiff "[pled] no facts and cite[d] no prior instances of unconstitutional conduct to support his conclusory allegation that Metro was aware of a history of illegal arrests, much less that they ignored them"); *Spainhoward v. White Cty., Tennessee*, 421 F. Supp. 3d 524, 544 (M.D. Tenn. 2019) (dismissing failure-to-train claim where plaintiff did "not set forth *any* facts that there were prior instances of similar misconduct to show that White County was on notice that its training and supervision with respect to vehicular pursuits or the use of force was deficient") (emphasis in original).

Plaintiff has likewise failed to sufficiently assert a claim based on a single violation. Nowhere in her Second Amended Complaint does Plaintiff allege "a complete failure to train the [officers], training that is so reckless or grossly negligent that future . . . misconduct is almost inevitable or would properly be characterized as substantially certain to result." *Harvey v. Campbell Cty., Tenn.*, 453 F. App'x 557, 567 (6th Cir. 2011) (quoting *Hays v. Jefferson Cnty.*, 668 F.2d 869, 874 (6th Cir.1982) (internal quotation marks omitted); *see Birgs v. City of Memphis*, 686 F. Supp. 2d 776, 780 (W.D. Tenn. 2010) (dismissing municipal liability claims because "[s]tripped of legal language, [p]laintiff's [c]omplaint contains no fact that could plausibly lead one to believe that the City deliberately ignored a history of abuse by officers in the Memphis Police Department" and "fails to allude to any incident of brutality other than the one [the plaintiffs] allegedly suffered"). Nor has she plausibly alleged that Louisville Metro's deliberate indifference "created a training regimen so deficient that it was the actual *cause* of" any of the defendant's alleged unconstitutional conduct. *Harvey*, 453 F. App'x 557 at 568 (emphasis in

original). Moreover, "where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." *Mann v. Helmig*, 289 F. Appx 845, 851 (6th Cir. 2008) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985).

In essence, Plaintiff asks the Court to infer that Louisville Metro was "deliberately indifferent" in training Defendant Officers on using minors as undercover informants from the fact that, given the training the officers had, Devor Stoner still was shot and killed while undercover as an informant. But in the context of failure-to-train claims, the Sixth Circuit has rejected this inference: "[t]o reiterate, it is not reasonable to draw inferences—as the district court appears to have done—of inadequate training, deliberate indifference and causal effect from the mere fact that, given the training he had, Lowe still shot and killed Harvey." *Ransom v. Louisville-Jefferson Cnty. Metro. Gov't,* No. 3:19-CV-631-RGJ, 2020 WL 5944283, at *6 (W.D. Ky. Oct. 7, 2020) (citing *Harvey*, 453 F. App'x 557 at 568).

The Court thus concludes that the Second Amended Complaint lacks sufficient allegations to state a claim for liability against Louisville Metro under an illegal policy theory, a failure-to-train theory, and a failure-to-supervise theory. Louisville Metro's Motion to Dismiss as to those claims is **GRANTED**.

### c. Eighth Amendment

Plaintiff also asserts that Defendants violated their Eighth Amendment rights within the §1983 failure to train claim, [DE 1-3 at 58 ¶93], alleging that Plaintiff "can thus establish an Eighth Amendment violation if she can prove that Metro knew of and disregarded an excessive risk to Devor's health or safety." [DE 8 at 141]. But the Eighth Amendment applies only to those

individuals who have been tried, convicted, and sentenced. *Richko v. Wayne Cnty., Mich.*, 819 F.3d 907, 915 (6th Cir. 2016); *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Neither Plaintiff nor Devor were a convicted prisoner at the time of this alleged violation and the Eighth Amendment does not apply.[4] Defendant's Motion as to this claim is **GRANTED.**

### d. Fourth and Fourteenth Amendment

Plaintiff also appears to allege constitutional violations of the Fourth and Fourteenth Amendments in her § 1983 claim for a failure to train and supervise. Plaintiff states that "[d]efendants did . . .erroneously and illegally sieze, detain, arrest and cause the injury and death of Devor Andre Stoner, Jr. in violation of federal constitutional protection under the Fourth, Eighth and Fourteenth Amendments[.]" [DE 1-3 at 58 ¶93] In her Response, Plaintiff asserts that "[t]he cited Amendments bar Defendant Metro and its employees from unnecessarily and wantonly inflicting pain on Devor through deliberate indifference to the known, serious risk of harm in undercover operations." [DE 8 at 139]. As noted above, the deliberate indifference standard for a municipality's liability under a failure-to-train and failure-to-supervise claim is not the same as a deliberate indifference analysis used for Eighth, Fourteenth or Fourth Amendment violations. Moreover, the above citations constitute the entirety of Plaintiff's arguments on this claim allegedly arising under the Fourth and Fourteenth Amendments. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009) ("It is not sufficient for a party

---

[4] Plaintiff may have confused the subjective prong of the analysis set forth in *Farmer v. Brennan*, 511 U.S. 825 (1994), applicable to when an inmate is exposed to a substantial risk of serious harm, with the standard outlined in *City of Canton v. Harris*, 489 U.S. 378 (1986), applicable to when a failure to train amounts to deliberate indifference to the rights of persons with which the police come into contact. While both standards use the language of 'deliberate indifference,' they are different standards and apply to different areas of the law.

to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997); *see also Singleton v. Astrue*, No. CIV.A. 09-333-GFVT, 2010 WL 6004448, at *3 (E.D. Ky. June 28, 2010), *report and recommendation adopted*, No. CIV. 09-333-GFVT, 2011 WL 843965 (E.D. Ky. Mar. 9, 2011) ("It is well-established that courts are not obligated to consider unsupported arguments inadequately developed in the briefs") (quoting *Lewless v. Sec'y of Health & Hum. Servs.*, 25 F.3d 1049 (6th Cir. 1994) (Table) (internal quotation marks and formatting omitted). As a result of Plaintiff's lack of argument regarding this claim, this Court considers this argument waived and does not address any alleged claim stemming from these Amendments. Defendant's Motion as to this claim is **GRANTED**.

### e. Punitive Damages

Plaintiff also claims she is entitled to punitive damages, [DE 1-3 at 60], although she now concedes that punitive damages are not recoverable against Louisville Metro. [DE 8 at 146]. The Court agrees that punitive damages are not an available remedy against municipalities. *See Marksbury v. Elder,* No. 5:09-CV-24-REW, 2011 WL 5598419, at *9 (E.D. Ky. Nov. 17, 2011) ("[N]either § 1983 nor Kentucky law permits an award of punitive damages against a municipality"); *D.H. v. Matti,* No. 3:14-CV-732-CRS, 2015 WL 4530419, at *10 (W.D. Ky. July 27, 2015) ("In light of the statute, [*Louisville Metro Housing Authority v.] Burns [*198 S.W.3d 147 (Ky.App. 2005)], *City of Newport [v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981)], and *Phelps [v. Louisville Water Co.,* 103 S.W.3d 46 (Ky. 2003)], this Court finds that the Kentucky Supreme Court would not allow for punitive damages against a municipality. . . Accordingly, the Court concludes that the plaintiff may not recover punitive

damages against the City of Brandenburg"). Plaintiff's state-law punitive damages claim is **DISMISSED** against Louisville Metro.

### IV.    Conclusion

For all these reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** as follows:

(1) Plaintiff's Motion to Remand [DE 5] is **DENIED**.

(2) Louisville Metro's Motion to Dismiss [DE 4] is **GRANTED** and the claims asserted against Louisville Metro in Counts 1-6 of the Second Amended Complaint are **DISMISSED WITH PREJUDICE** to the extent they are based on state law.

(3) The claims asserted against Louisville Metro in Counts 5-6 of the Second Amended Complaint are **DISMISSED WITHOUT PREJUDICE**.

(4) Any claim for punitive damages against Louisville Metro is **DISMISSED WITH PREJUDICE.**

(5) The Court will refer the case for Rule 16 conference with the Magistrate Judge by separate order.

Rebecca Grady Jennings, District Judge
United States District Court

September 13, 2023

cc:    Counsel of Record

21